*Windsor, February, 1826.*

MOSES PINGRY, defendant below, *vs.* REUBEN WASHBURN, *Treasurer of the Green Mountain Turnpike Company,* plaintiff below.— *IN ERROR.*

The rule touching the order of testimony, in the trial of causes in the Supreme Court, is, that the party on whom rests the burthen of proving any fact, shall first proceed with evidence for that purpose, and if no testimony is given tending to disprove the fact thus attempted to be established, no further testimony will be received upon that point.

The legislature can pass no act, impairing the rights or privileges of a corporation, opposed to the original grant, without its consent.

What is evidence of such consent.

An agreement on the part of a corporation, to grant to individuals certain privileges, in consideration that they will withdraw their opposition to the passage of a legislative act, touching the interests of the corporation, is against sound policy, prejudicial to correct and just legislation, and void.

A strict and literal compliance with the statute is necessary, in order to make a deposition evidence in Court.

The certificate of the magistrate, of the cause for taking a deposition, is *not* conclusive.

The magistrate, in taking testimony to be improved in Court, acts in the character of an agent of the Court, and no deceit practiced by him or upon him, will be sanctioned.

If the certificate be *defective,* parol testimony is *not* admitted to supply the omission.

The mere passing a turnpike gate, and refusing to pay toll when demanded, is a *forcible* passing, within the meaning of the act of incorporation, if the person so passing was *subject* to pay toll.— *Aliter,* if he was not liable to pay toll.

If a person pay toll, or has commuted for a given period, or is exempted from paying toll, by the provisions of the act granting the turnpike, he may open the gate himself, so that he does not commit a breach of the peace. And if he break the peace, he will be punished under the general law, but not by imposing the penalty prescribed in the act granting the turnpike.

THE judgment sought to be reversed by this writ of error, was rendered by the county court of Windsor county, in an ac-

*Windsor,*
February,
1826.

*Pingry*
*vs.*
Washburn,

tion on the case, brought to recover the penalty for forcibly passing a turnpike gate, without having first paid toll, contrary to the provisions of the 8th section of the act incorporating the Green Mountain Turnpike Company. On the trial below, the defendant having pleaded not guilty, with notice of special matter, the plaintiff, to prove the issue on his part, read in evidence the act incorporating said company, passed Nov. 2, 1799, in which it is enacted, among other things, "that if any person shall attempt forcibly to pass any gate on said road, without having paid the legal toll at said gate, such person shall forfeit and pay a sum not exceeding fifty dollars, nor less than one dollar, together with double damages and costs, to be recovered by the treasurer of said corporation, to and for the use thereof, in an action on the case, before any court having competent jurisdiction."

The third section of the act also provides, "that no person shall be obliged to pay any toll at either of said gates, who shall be going to or from publick worship, or to or from any grist mill, or saw mill, or on militia duty, or on the ordinary domestick business of family concerns."

It was admitted that the corporation had performed all the conditions of the act, so as to entitle them to the benefit of all the provisions thereof, and that the plaintiff below was their treasurer.

He also offered in evidence the deposition of one *Zebrah Wright*, taken at Ludlow, in which it was certified by the magistrate, as the cause of taking, that the deponent was rendered incapable of travelling and appearing at Court, by reason of bodily infirmity. The defendant below objected to the reading this deposition, and offered to prove to the Court, that the deponent was not at the time of taking the deposition, nor at any time since, rendered incapable of travelling and appearing at Court by reason of bodily infirmity, and that the plaintiff knew the same. But the county court rejected the proof, and admitted the deposition.

The plaintiff, further to maintain the issue on his part, produced *Stephen Wright*, the toll-gatherer, as a witness, who testified, that on the evening of the fifteenth day of February, eighteen hundred and twenty-three, the defendant drove up in a sleigh drawn by two horses, to the east side of the toll-gate, in said Ludlow, and demanded to pass said gate, free of toll, and assigned as a reason, that he was exempted from paying toll, by the act of 1822, hereafter referred to; that the said Wright stated to him, that he was not thereby so exempted, and that the defendant thereupon forcibly passed said gate; that after he had so passed, said defendant stated that he had been to mill, to Cavendish; that the said Wright then stated to him, that he had passed in the morning of that day without paying toll, and that now if he was coming from mill, he ought to pay *one* toll, which the defendant refused to pay. And the said Wright further testified, that the defendant had bags of flour or meal in said sleigh

34

*Windsor,*
*February,*
*1826.*

*Pingry*
*vs.*
*Washburn.*

at said time, and that he saw no other loading. And it was admitted by the defendant, that he passed said gate at the times mentioned, without paying toll.

And the defendant, to maintain the issue on his part, offered to read in evidence to the jury, an act of the legislature of the state of Vermont, passed on the 21st day of October, 1822, entitled "an act, authorizing the Green Mountain Turnpike Company to re-survey and alter their road," in which it is provided, among other things, that the inhabitants of Mountholly (of whom the defendant is one,) shall have the liberty of passing the turnpike gates in Ludlow and Shrewsbury, free of toll; and also offered to prove, that said act was passed with the consent and by the procurement of said company, and that after said act was passed, the said company accepted the same; to prove which acceptance, the defendant offered no other evidence than that the said company had made a survey of the road, as contemplated to be altered by said act, but that they had not recorded said survey. And the defendant further offered to prove, that just previous to the passing of said act, said company did agree with the defendant, that if he would not oppose the passing of said act, that he and the inhabitants of Mountholly should pass toll-free at said gate. To all which the plaintiff did object, and said Court thereupon did decide, that said act and proofs should not be given in evidence to the jury.

The defendant then gave evidence to the jury, from which it appeared, that he went from home, for the purpose of going to mill at Cavendish, for a Mr. *Nathaniel Pingry*; that he carried a grist for the said *Nathaniel*, which he brought back in flour, and also some bags of flour for a son of said *Nathaniel Pingry*, and at the same time carried a part of a load of ashes, to Proctor's store, near said mill; that the village at Proctor's, in Cavendish, was the place where he usually went to mill, and for the purposes of trade, and to get his mechanick's work done; that, in going to Cavendish, the route would be through said gate.

After the defendant's evidence was closed, the plaintiff offered the said *Zebra Wright* as a witness upon the stand, to testify in chief. To this the defendant objected, but the county court overruled the objection, and admitted the witness, who, in addition to the facts contained in her deposition, testified to other matters, tending to impeach the testimony produced by the defendant. And the plaintiff thereupon withdrew the deposition.

The defendant did insist to the jury, that from the testimony, they ought to find, that the defendant, at the times of passing said gate, was going to or from a grist-mill, or on the ordinary domestick business of family concerns, and that at each of said times, he informed the toll-gatherer of the same, before passing said gate. And the defendant did, on trial, insist in point of law, and did request said Court so to charge the jury; that if they found that the defendant, at the time of passing said gate, was going to or from a grist-mill, or on the ordinary domestick business of family concerns, within the meaning of the act afore-

*Windsor,*
*February,*
*1826.*

*Pingry*
*vs.*
*Washburn.*

said, he was not liable to the penalty of said act; and also that if they found as aforesaid, he was not liable to the penalty, even though he neglected to claim his privilege, unless actual force was used in passing the gate, and that the proof did not show that such force had been used at the first passing said gate, on said day.

But said Court did refuse so to charge said jury, but did give in charge to said jury, that it was necessary for the defendant, not only to prove that he was entitled to the privilege by reason of going to or from a grist-mill, or on the ordinary domestick business of family concerns, but that he must also prove, that he gave notice of and claimed such privilege, to the toll-gatherer, before passing the gate; and that if the jury believed the notice was not so given in the morning, at the first time passing said gate, they ought to find for the plaintiff, even if they found that such notice was given before the second passing. And if they believed he then opened said gate, as stated in the deposition, that it was a forcible passing the gate.

To all which decisions of the Court, in admitting and reject-ing testimony as aforesaid, and the charge of the Court, the defendant did except.

A bill of exceptions being thereupon allowed, this writ of error was brought, and the following errors were assigned:

1. That said county court did reject the evidence offered by said Pingry, to prove that the said *Zebrah Wright* was not, by reason of bodily infirmity, rendered incapable of traveling and appearing at court, of which the said company had notice, and that said court did admit said deposition.

2. That said court admitted the said Zebrah Wright to be sworn, and give evidence in said cause, after the said company had read her deposition, in evidence.

3. That said court rejected the evidence offered by the said Pingry, touching the act of 1822.

4. That said court, in their charge to the jury, mistook and misstated the law in the premises.

And now, after argument, at this term, the opinion of the Court was pronounced by

Skinner, Ch. J. For the purposes of correct and regular pro-ceeding, and as far as possible, of placing the claims of parties upon equal footing, in the trial of causes, all courts are presum-ed to have adopted certain rules, applicable to the order in which testimony shall be given. The rule is, that the party on whom rests the burden of proving any fact, shall first proceed with evidence for that purpose, and if no testimony is given, tending to disprove the fact thus attempted to be established, no farther testimony will be received upon that point. A departure, however, from this course, in the county court, has never been held by the Supreme Court, cause for reversing judgment, and unless the order of proceeding shall have been such as is evidently calculated to give an undue advantage, it would not be the duty of this Court to interfere.

*Windsor,*
*February,*
*1826.*

Pingry
*vs.*
Washburn.

The act of 1822, authorizing the company to re-survey and alter their road, and permitting the inhabitants of Mountholly to pass the gate free of toll, can have no effect upon the rights of the corporation, unless accepted by it. The legislature can pass no act, impairing the rights or privileges of a corporation, opposed to the original grant, without its consent. It appears from the case, that the corporation, after this act was passed, proceeded to survey the ground, but made no record of the survey, and have made no alteration in the road. We believe, therefore, there has been no acceptance on the part of the corporation, and that the testimony was properly rejected.

The record shows, that the defendant below offered to give evidence of a contract or agreement, between himself and the corporation, that if he would not oppose the passing of the act of 1822, the defendant, and all the inhabitants of Mountholly, should pass the gate toll-free. Whether the testimony was rejected on the ground, that defendant did not desist, or that he procured the conditions to be annexed to the act, without the consent of the corporation, or that the contract was against sound policy, does not appear; but that such contract is against sound policy, prejudicial to correct and just legislation, and of course void, is not to be questioned.

Depositions are, by our statute, admitted as evidence contrary to the rules of common law, and they are a kind of testimony, not highly favoured. A strict and literal compliance with the statute is necessary, and the courts have refused to permit parties to avail themselves of such testimony, although the forms required may have been strictly pursued, where there has been any deceit or fraud practiced in the taking.

It is insisted, that the certificate of the magistrate is conclusive; this is not agreeable to the practice in this Court, nor is it correct. If the certificate is *defective,* parol testimony is *not* admitted to supply the omission.

The magistrate, in taking testimony to be improved in court, is acting in the character of an agent of the court, and no deceit practiced by him, or upon him, will be sanctioned.

If the cause certified, for taking the deposition, is the sickness of the deponent, or that he is going out of the state, would not the Court hear testimony of his being present in court at the time of trial? or would they permit a deposition, taken in Woodstock, to be read, though certified to be more than thirty miles from the place of trial?

The withdrawing the deposition, and improving the deponent afterwards, as a witness upon the stand, might perhaps cure the error, if the case showed the oral testimony to have been the same as contained in the deposition. But in recurring to the record, it appears, that the testimony given on the stand, was in *addition* to the facts contained in the deposition, and the judge, in charge, refers the jury to the deposstion, as testimony: we are not, however, inclined to rest the opinion wholly upon this point.

*Windsor*,
February,
1826.

Pingry
*vs.*
Washburn.

The defendant below was, by reason of his employment at the time he passed the gate, exempt by the statute from the payment of toll. The manner of passing in the morning, as appears from the case, was unquestionably such as to subject a person to the penalty for *forcibly* passing the gate, who was subject to pay toll. It was the duty of the defendant to have given notice of his exemption; and the toll-gatherer would have been justified in resisting forcibly, without such notice.

But we consider the penalty does not attach to any one who is not liable to pay toll. If a person has paid toll, he has a right to open the gate and pass, so that he does not commit a breach of the peace; and if he breaks the peace, although the law will inflict punishment upon him, yet not by imposing the penalty given by this statute. A conviction under the statute would be no bar to a prosecution for breach of the peace. The same principle will apply to the person who has commuted for a given period, and must also to a person who is exempt from toll by the proviso to the third section of the statute.

There is, therefore, error in the judgment, &c. and the same is reversed.

*H. Everett*, for the plaintiff in error.

*R. Washburn*, pro se.